UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROSEANN ADELE BREININ,

                              Plaintiff,

v.                                                    5:14-CV-01166

                                                      (LEK/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN            DANIEL R. JANES, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, United States Senior District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, the Court recommends that the decision of the Commissioner be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently twenty-six years old, with a date of birth of October 16, 1988. (Administrative Transcript at 47, 180.)[1] She has a high school diploma and completed two semesters of college. (T. at 47-48, 536.) She has a driver's license and drives by herself. (T. at 223, 229.) Plaintiff previously worked as a dancer, waitress, bartender, deli worker, and cashier. (T. at 232-39.) Plaintiff alleges disability due to anxiety, bipolar disorder, depression, fibromyalgia, psoriasis, psoriatic arthritis, stomach issues, and migraines. (T. at 44, 60, 65.)

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI") on May 23, 2012, alleging disability as of November 14, 2011. (T. at 180-86, 187-92.) Both applications were initially denied on July 24, 2012. (T. at 113-18.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 10, 2012. (T. at 123-24.) The hearing was held on November 13, 2012, before ALJ Jennifer Gale Smith. (T. at 43.) Plaintiff appeared in person and was represented by counsel. *Id.* On January 2, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 25-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 24, 2014. (T. at 4-6.) Plaintiff was granted an extension of time to file this action, which was commenced on September 22, 2014. (T. at 1-2; Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 11. Citations to the Administrative Transcript will be referenced as "T" herein.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[2] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered

throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To

determine on appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from both sides, because an

analysis of the substantiality of the evidence must also include that which detracts from its

weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the

ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's

positions and despite that the court's independent analysis of the evidence may differ from the

[ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of

the administrative record for that of the Commissioner if the record contains substantial support

for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that Plaintiff meets the insured status requirements of the Social

Security Act through March 31, 2013. (T. at 25.) The ALJ found at step one that Plaintiff had

---

[2] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

not engaged in substantial gainful activity since November 14, 2011, her alleged onset date.[3]  (T. at 27.)  At step two, the ALJ found that Plaintiff had the severe impairments of bipolar disorder, panic disorder, psoriasis, psoriatic arthritis, and fibromyalgia.  (T. at 27-28.)  At step three, the ALJ determined that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the severity of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that she retained the ability to "lift no more than 10 pounds at a time; stand for 2 hours out of an 8 hour workday; walk for 2 hours out of an 8 hour workday; sit for 6 hours out of an 8 hour workday with changes in positions made during regularly scheduled breaks and a lunch hour; understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting."  (T. at 30.)

At step four, the ALJ concluded that Plaintiff did not have past relevant work.  (T. at 33.)  At step five, the ALJ relied on the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, and concluded that Plaintiff was not disabled because jobs existed in the national economy that Plaintiff could perform.  *Id.*  Thus, the ALJ denied Plaintiff's claim for disability benefits.  (T. at 34.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by (1) failing to properly establish Plaintiff's RFC which includes a failure to follow the treating physician rule and a failure to properly assess Plaintiff's credibility; and (2) failing to obtain the testimony of a vocational expert.  (Dkt. No.

---

[3]  The ALJ noted that treatment notes indicated Plaintiff worked after her alleged onset date as a dancer, waitress, and bartender.  (T. at 27, 527.)  There is no documented evidence, however, showing Plaintiff had any earnings from this reported work activity.  (T. at 27.)

12.)  Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed.  (Dkt. No. 15.)  For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence.  As such, remand is unnecessary.

## V.    DISCUSSION

### A.    Residual Function Capacity

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id.* § 404.1545(a).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. §§

404.1569a(a), 404.1569a(b), and 404.969a(a).  Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id.*

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations.  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted).  "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  *Roat*, 717 F. Supp. 2d at 267 (citation omitted).  "RFC is then used to determine the particular types of work a claimant may be able to perform."  *Whittaker*, 717 F. Supp. 2d at 440.

Based on the entire record, the ALJ reasonably concluded that during the relevant period Plaintiff retained the RFC to:

> lift no more than 10 pounds at a time; stand for 2 hours out of an 8 hour workday; walk for 2 hours out of an 8 hour workday; sit for 6 hours out of an 8 hour workday with changes in positions made during regularly scheduled breaks and a lunch hour; understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.

(T. at 30.)

In reaching this determination, the ALJ gave great weight to the opinions of consultative examiners, Kalyani Ganesh, M.D., and Dennis Noia, Ph.D. (T. at 31-32.) The ALJ gave less weight to the opinion of James F. Hyla, M.D., Plaintiff's treating rheumatologist, finding the doctor's opinions to be inconsistent, speculative, and unsupported by clinical findings and Plaintiff's reported abilities. (T. at 32.) The ALJ afforded partial weight to the opinions of Plaintiff's treating mental health providers, Roger G. Levine, M.D., and Johanna D. Tarallo, N.P. ("NP Tarallo"), specifically giving less weight to the opinion that Plaintiff would be off task for more than twenty percent of the work day because it was speculative. *Id*.

### 1.     Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. *See* 20 C.F.R. § 404.1527(c)(2). "Medically acceptable techniques include consideration of a patient's report of complaints, or the patient's history, as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(i)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177

F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

Here, the ALJ gave little weight to the opinion of Plaintiff's treating rheumatologist, Dr. Hyla, and partial weight to the opinions of Plaintiff's treating mental health care providers, Dr. Levine and NP Tarallo. (T. at 32.) Absent contrary evidence in the record, treating source opinions such as these generally would be given controlling weight. Here, however, the ALJ properly provided good reasons for not crediting the opinions of Dr. Hyla, Dr. Levine, and NP Tarallo.

### 2. Physical RFC

In the November 20, 2012, Medical Source Statement, Dr. Hyla opined that Plaintiff could stand and walk for less than two hours, sit for only twenty minutes at one time, stand for only thirty minutes at one time, required elevating her foot fifty percent of the workday, would be off-task for more than twenty percent of the workday due to her impairments, and would likely be absent from work more than four days per month. (T. at 634-36.) Dr. Hyla also opined that Plaintiff had moderate limitations in responding appropriately to usual work situations and to changes in routine work setting. (T. at 638-40.)

The ALJ's determination shows that she considered Dr. Hyla's Medical Source Statements, but gave them little weight, finding his opinions were inconsistent, speculative and unsupported by clinical findings or Plaintiff's statements. (T. at 32.) First, the ALJ found that Dr. Hyla's statement that Plaintiff would have difficulty performing a stationary sitting job

because of her need to get up and move around was inconsistent with Plaintiff's testimony that she can perform a sit-down job, and her previous statement that "sitting is great for me as long as I can almost slouch & lean my lower back onto the back of the chair." (T. at 32, 226, 533.) Second, the ALJ found that Dr. Hyla's statement that Plaintiff is incapable of performing sedentary work, including the inability to stand/walk for two hours or complete an eight hour workday, was speculative and unsupported by clinical findings or the claimant's reported abilities, including Plaintiff's statement that she was able to perform the standing/walking requirements of deli work and was currently able to work as a secretary/receptionist. (T. at 32, 634-36.) Finally, the ALJ afforded little weight to Dr. Hyla's statement that Plaintiff has moderate limitations in responding appropriately to usual work situations and to changes in routine work setting because he noted the only reason Plaintiff has these limitations was because of her need to change positions and that "this is a physical not mental issue." (T. at 32, 638-40.)

### a.       Plaintiff's Treatment with Dr. Hyla

Plaintiff began treating with Dr. Hyla on March 2, 2011. (T. at 641.) During her initial consultation, Dr. Hyla noted that Plaintiff did not have any major psoriatic change on her skin. *Id*. On exam, the small joints of her hand showed no sign of inflammation. *Id*. Dr. Hyla noted that she can hyperextend her joints and could easily get her thumb to her forearm. *Id*. Plaintiff had no swelling or pain in her elbows or shoulders. *Id*. Her shoulder range of motion was good. *Id*. Plaintiff's cervical range of motion was good. *Id*. Plaintiff had some tenderness in the mid-thoracic spine, but nowhere else in the spine. *Id*. She had tenderness in both knees, but no swelling. *Id*. Plaintiff's hip range of motion was good without any groin pain. *Id*. Her ankle

range of motion was good without swelling or pain.  *Id*.  Plaintiff reported that she felt Humira[4]

had helped with her peripheral joints.  *Id*.  Plaintiff self-reported that she never felt rested.  *Id*.

Dr. Hyla increased Plaintiff's Ibuprofen[5] 800mg to three times a day, prescribed Flexeril,[6] and

stressed to Plaintiff the importance of trying to improve her deep sleep.  *Id*.

On March 22, 2011, Plaintiff was "definitely sleeping better with Flexeril at night,"

although she indicated some morning grogginess.  (T. at 643.)  Dr. Hyla increased the dosage of

Flexeril because her pain level was "down" since she started taking the medication.  *Id*.  Dr. Hyla

reviewed the March 2, 2011 x-rays, finding that her inflammatory tests were "fine" and that the

SI joints are "okay."  *Id*.  Her LS spine and cervical spine showed straightening but no definite

erosive disease at all.  *Id*.  Dr. Hyla found no evidence of psoriatic spondylitis.  *Id*.

On June 21, 2011, Plaintiff indicated that she still had trouble with her knees and that she

felt weather effects.  (T. at 644.)  Her neck was much better with Flexeril.  *Id*.  Plaintiff

continued to be "doing well" on Humira for her psoriasis.  *Id*.  On exam, Plaintiff had no

swelling in either knee and no signs of inflammation.  *Id*.  Plaintiff reported that the Ibuprofen

800mg reduced any pain she experienced.  *Id*.  Overall, Dr. Hyla opined that "she is doing well

with very little medication" and recommended a follow-up appointment in six months.  *Id*.

---

[4]  Humira is indicated for reducing signs and symptoms, inhibiting the progression of structural damage, and improving physical function in adult patients with active psoriatic arthritis.  Humira is also indicated for the treatment of adult patients with moderate to severe chronic plaque psoriasis who are candidates for systemic therapy or phototherapy, and when other systemic therapies are medically less appropriate.  Humira is administered by subcutaneous injection.  Physicians' Desk Reference, PDR.net, http://www.pdr net/full-prescribing-information/humira?druglabelid=12#section_1.2 (last visited Oct. 14, 2015).

[5]  Ibuprofen is indicated for the relief of the signs and symptoms of rheumatoid arthritis and osteoarthritis and for the treatment of primary dysmenorrhea in adults.  It is also indicated for the relief of mild to moderate pain in adults.  Physicians' Desk Reference, PDR.net, http://www.pdr.net/drug-summary/ibuprofen-tablets?druglabelid=2618&id=3945 (last visited Oct. 14, 2015).

[6]  Flexeril is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions.  Physicians' Desk Reference, PDR net, http://www.pdr net/drug-summary/cyclobenzaprine-hydrochloride?druglabelid=3089 (last visited Oct. 14, 2015).

On November 16, 2011, Plaintiff returned to Dr. Hyla's office. (T. at 645.) The records indicate that Plaintiff had a number of conversation by phone with Dr. Hyla. *Id.* Plaintiff had increased pain symptoms in her neck and back and trouble sleeping. *Id.* Plaintiff reported that her neck was better on Amitriptyline.[7] *Id.* Plaintiff self-reported that she could only stand for about half an hour before her back bothered her. *Id.* Plaintiff also reported that standing and walking around while working at the deli and as a cashier aggravated her back. *Id.*

On exam, Plaintiff had good cervical range of motion without pain. *Id.* Dr. Hyla recommended increasing Amitriptyline at bedtime. (T. at 645.) In terms of working, Dr. Hyla opined that Plaintiff:

> would do best on a job where she is sitting most of the time but also gets up to move around. I don't think a stationary sitting job would work as she would likely get more muscle tightness and pain by staying in the same position all the time. She has the possibility of getting some help from VESID which would be very useful so I told her I would send a copy of this to VESID.

(T. at 645.)

Dr. Hyla's records indicate Plaintiff was to follow-up in one month. *Id.* Approximately nine months later, Plaintiff returned to Dr. Hyla's office on August 6, 2012.[8] (T. at 649.) Plaintiff informed Dr. Hyla that she was applying for social security disability and that her attorney would be in touch to gather information. *Id.* Plaintiff self-reported that her symptoms had been worsening and she was experiencing more trouble with her lower back and neck. *Id.* Plaintiff indicated that her neck pain caused headaches. *Id.* Plaintiff did not have radicular symptoms with her neck or her back. *Id.*

---

[7] Amitriptyline is indicated for relief of symptoms of depression. Physicians' Desk Reference, PDR.net, http://www.pdr.net/drug-summary/amitriptyline-hydrochloride?druglabelid=1001&id=1578 (last visited Oct. 14, 2015).

[8] As noted above, Plaintiff's initial application for benefits was denied on July 24, 2012. (T. at 113-18.)

At that time, Plaintiff felt that "Humira is doing a very good job with her psoriasis." *Id*. Plaintiff's knees, which had previously bothered her, were better. *Id*. Plaintiff indicated that her sleep was not the best and that she still had fatigue in the morning. *Id*. On exam, Dr. Hyla did not find any evidence for inflammatory arthropathy. *Id*. He wanted her to have new x-rays of the lumbar and cervical spine. *Id*.

On September 12, 2012, Plaintiff returned to Dr. Hyla's office and reported that she continued to have discomfort. (T. at 651.) Her psoriasis was still under control with Humira and it also helped with her knee pain. *Id*. Plaintiff rated her pain severity at 8/10 and indicated she was experiencing generalized morning stiffness for thirty minutes. *Id*. Plaintiff experienced no side effects from Ibuprofen or Humira. *Id*. She indicated that x-rays and an MRI of her low back had recently been done. *Id*. Dr. Hyla noted he would obtain copies. *Id*.

On October 22, 2012, Plaintiff returned to Dr. Hyla's office. (T. at 653.) She indicated her back and anterior neck were pretty much unchanged. *Id*. She indicated that she did not feel rested after sleeping. *Id*. She tolerated her medications. *Id*. Plaintiff reported that sitting reclined was more comfortable than sitting upright. *Id*. Plaintiff reported that she could only sit for fifteen to twenty minutes before needing to move her back. *Id*. She explained that walking at that time helped with her back pain. *Id*. Plaintiff also indicated that she had pain if she was standing still, such as while waiting in the check-out line while shopping. *Id*. She reported that she felt a little better if walking, although that was limited to twenty to thirty minutes while shopping. *Id*. Plaintiff rated her pain severity as "mild." *Id*. Plaintiff continued to take Ibuprofen and orphenadrine[9] with no side effects. *Id*.

---

[9] Orphenadrine is indicated as an adjunct to rest, physical therapy, and other measures for the relief or discomfort associated with acute, painful musculoskeletal conditions. Physicians' Desk Reference, PDR.net,

Plaintiff and Dr. Hyla discussed her ability to work. (T. at 654.) Dr. Hyla records reflect that he doesn't "feel she could do an 8 hour work day because of her inability to stand or sit for any long period of time. She needs frequent changes in position and the ability to get up and walk. Unfortunately these would not fit into any scheduled time frame, but unscheduled breaks." *Id*.

On December 14, 2012, Plaintiff reported that four days prior, she awoke to find both knees swollen. (T. at 700.) Over the next few days, the pain and swelling slowly subsided. *Id*. Plaintiff denied any injury, but reported recent cardio workouts on an elliptical trainer and bike with her boyfriend. *Id*. Plaintiff described her pain severity as 5/10 and indicated she was experiencing generalized morning stiffness for one hour. *Id*. Plaintiff denied having fatigue. *Id*.

Dr. Hyla's records generally do not contain reports of physical exams, and there is no indication he reviewed results of the x-rays and MRI referenced in his September 12, 2012, encounter note. (T. at 651.) As set forth in more detail below, the results of those diagnostic tests were unremarkable. (T. at 614, 618-19.)

### b. Dr. Ganesh's Consultative Exam

In contrast, the ALJ assigned consultative examiner Dr. Ganesh's July 12, 2012, opinion that Plaintiff had no gross physical limitations in sitting or the use of her arms great weight because it was supported by Dr. Ganesh's examination findings, Plaintiff's positive response to treatment, and Plaintiff's testimony and statements. (T. at 31.) Dr. Ganesh considered Plaintiff's statements during the consultative exam, including that Humira helped with her psoriasis but that she continued to have joint pain and pain in the knees, ankles, wrists, neck, and lower back. (T. at 541-42.) Plaintiff also stated she cooked once or twice a week, cleaned once a week, did

---

http://www.pdr.net/drug-summary/orphenadrine-citrate-extended-release-tablets?druglabelid=1580&id=620 (last visited Oct. 14, 2015).

laundry and shopping every two weeks, showered and dress daily and enjoyed television, radio and reading. *Id*. On physical examination, Dr. Ganesh found that Plaintiff appeared in no acute distress, had a normal gait and stance, could walk on heels and toes without difficulty, squatted fully, utilized no assistive devices for ambulation, required no help changing for the examination or getting on and off the examination table, and rose from her chair without difficulty. (T. at 542.) Plaintiff had a full range of motion in her cervical spine, lumbar spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles. (T. at 543.) Additionally, the straight leg raising studies were negative. *Id*. Dr. Ganesh ultimately found that Plaintiff had no gross physical limitations to sitting, standing, walking, or using her upper extremities. (T. at 544.) The ALJ stated that greater weight was not given to Dr. Ganesh's opinion that Plaintiff has no limitations in standing or walking, finding it was less consistent with Plaintiff's history of knee pain and her testimony that she has difficulty standing and walking. (T. at 31.)

### c. Other Medical and Testimonial Evidence

Treatment notes from treating dermatologist William G. Patrick, M.D., indicated that Plaintiff's psoriasis and psoriatic arthritis symptoms improved with her use of Humira. (T. at 30-31, 478-79, 597-98.) By October 27, 2011, Plaintiff had no active body plaques. (T. at 478-79.) On February 27, 2012, Dr. Patrick noted that Plaintiff's psoriasis remained clear and that Humira helped with her joint discomfort, particularly in her knees. (T. at 482.) Overall, Plaintiff was happy with her progress. *Id*.

Clinical and diagnostic evidence also supports the ALJ's conclusion that Plaintiff could perform sedentary work. On August 13, 2012, x-rays of Plaintiff's cervical and lumbosacral spine revealed no significant abnormalities. (T. at 618-19.) On September 11, 2012, MRI

studies of Plaintiff's lumbar spine showed no significant degenerative changes and no herniation, with only mild facet arthropathy and mild curvature. (T. at 614.) Additionally, no medical evidence supports Dr. Hyla's conclusion that Plaintiff would be required to elevate her left leg fifty percent of the workday, and neither Dr. Hyla nor any other medical source at Arthritis Health Associates advised Plaintiff to elevate her leg. (*See* T. at 557-68.)

The ALJ also considered Plaintiff's testimony at the November 13, 2012, hearing where she testified that she was capable of performing work as a receptionist in an office environment that was calm and that she previously told VESID that she needed "a non-stressful sit-down job" and that she would love to "do secretary work, something not overwhelming." (T. at 31, 75-76.) Plaintiff's statements in the June 29, 2012, Function Report indicate that sitting was "great" for her so long as she could slouch in her chair and that walking was "okay as long as I do not do it for a long time." (T. at 31, 76, 226.)

Plaintiff also claims that the ALJ substituted her own medical opinion for that of a physician. (Dkt. No. 12 at 13.)[10] Specifically, Plaintiff argues that the ALJ failed to include an appropriate option allowing Plaintiff to change positions with unscheduled breaks. (Dkt. No. 12 at 13.) On October 22, 2012, Dr. Hyla opined, "I don't feel she could do an 8 hour work day because of her inability to stand or sit for any long period of time. She needs frequent changes in position and the ability to get up and walk." (T. at 654.)

An "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). However, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013)

---

[10] Citation to page numbers in the parties' respective briefs (Dkt. Nos. 12 & 15) refer to the page number in the brief rather than to the page numbers assigned by the Court's electronic filing system.

(although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). The ALJ is responsible for determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946(c). In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

Here, the ALJ did not substitute her own medical opinion for the opinions of the examining physicians. As discussed above, the substantial evidence of record, including Plaintiff's testimony, supports the ALJ's decision that Plaintiff's impairments, singly or in combination, did not preclude her from performing sedentary work, which includes occasional walking and standing for roughly two hours of the workday, 20 C.F.R. §§ 404.1567(a), 416.967(a), along with the specific ability to change positions during regularly scheduled breaks and the lunch hour. (T. at 30, 220-39, 541-44.)

Plaintiff also claims that the ALJ had a duty to re-contact Dr. Hyla in light of the inconsistencies between Dr. Hyla's opinions and the record evidence. (Dkt. No. 12 at 11-12.) Defendant argues that the Second Circuit has held that the ALJ did not err in failing to re-contact a treating physician where the record contained sufficient evidence from which the ALJ could assess the claimant's RFC. (Dkt. No. 15 at 11, citing *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). Defendant is correct. As outlined above, the record contains sufficient

evidence, including Plaintiff's statements, diagnostic test results, and medical findings to support the ALJ's determination of Plaintiff's RFC.  Accordingly, re-contacting Dr. Hyla was unnecessary.

Therefore, the Court finds the ALJ properly weighed the medical opinions of record. Plaintiff's physical RFC is supported by substantial evidence, and remand is not warranted on these grounds.

### 3. Mental RFC

Plaintiff alleges the ALJ erred by affording only partial weight to the October 22, 2012, Medical Source Statement opinion of Dr. Levine and NP Tarallo that Plaintiff would be off task for more than twenty percent of the workday.  (Dkt. No. 12 at 13.)  The ALJ found this portion of the Medical Source Statement speculative and gave it less weight.  *Id.*  The ALJ assigned greater weight to Dr. Levine's opinion that Plaintiff can perform unskilled work because it was consistent with clinical findings, reported abilities and other opinions of record.  (T. at 32.) Plaintiff argues Dr. Levine's opinion should have been afforded controlling weight due to Dr. Levine's specialty, treating relationship, and consistency of opinion with the record.  (Dkt. No. 12 at 13.)

### a. Plaintiff's Treatment with Dr. Levine and NP Tarallo

Plaintiff began treatment with Dr. Levine and NP Tarallo in March, 2009.  (T. at 657.) Plaintiff's records throughout the relevant period reflect improvement with treatment.  For example, on November 14, 2011, Plaintiff appeared in "fair spirits."  (T. at 523.)  She talked about her stress of working and was experiencing "more irritability" with "dealing" with people and stress from a previous job.  *Id.*  Plaintiff indicated she was sleeping too much, and described

her appetite as fair. *Id*. She was getting some exercise and tolerating her medication without difficulty. *Id*. On December 14, 2011, Plaintiff reported improvements with her irritability and indicated that she enjoyed working out at the gym. (T. at 525-26.)

By February 1, 2012, Plaintiff was participating in VESID, reported feeling better, and appeared in better spirits with no significant anxiety. (T. at 527.) She reported that her sleep was "better now", her appetite was "good" and she was exercising more. *Id*. In fact, she was "back to dancing at the Alpine." *Id*.

On June 11, 2012, Plaintiff reported that "I'm doing okay," "life is good," and that she was interested in going back to school. (T. at 531.) She was tolerating her medication without difficulty and denied side effects. *Id*. Plaintiff reported going to the gym regularly and was planning on getting a new puppy soon. *Id*.

On August 22, 2012, Plaintiff reported "there has been a lot going on . . . VESID kicked me out . . . and my SS case was denied. (T. at 607.) Plaintiff felt "more agitated" and appeared in a low anxious mood. *Id*. She was struggling with unemployment and had been interviewing. *Id*. She described her sleep as "generally good/some days too much." *Id*. On September 9, 2012, Plaintiff reported that she turned in an application for employment. (T. at 605.) She appeared in fair spirits but was more irritable lately. Plaintiff's sleep was generally "good" and she was clear, coherent and organized. *Id*.

On October 18, 2012, Plaintiff indicated that she was "stressed out" and that "a lot has been going on . . . ." (T. at 656.) She continued to tolerate her medication without difficulty and denied side effects. *Id*. She was clear, coherent, and organized. *Id*.

In the October 22, 2012, Medical Source Statement, Dr. Levine diagnosed Plaintiff with Bipolar II Disorder, and gave a "Fair" prognosis "with continued treatment (for psychiatric diagnosis)." (T. at 657.) Dr. Levine found that Plaintiff either had "unlimited or very good" or "limited but satisfactory" ability in every single area of mental functioning, including interacting with the public, maintaining regular attendance, and dealing with normal work stress. (T. at 658-59.)

Dr. Levine opined that Plaintiff does not have a low IQ or reduced intellectual functioning and that it was "unknown" how often Plaintiff's impairments or treatment would cause Plaintiff to be absent from work because Plaintiff "has not worked full-time in quite awhile." (T. at 659.) Dr. Levine opined that Plaintiff's psychiatric condition did not exacerbate Plaintiff's experience of pain or any other physical symptom; rather, the "physical condition impacts psychological symptoms to some degree." *Id.* Dr. Levine also opined that Plaintiff would be off task more than twenty percent of the workday. *Id.*

In this case, Plaintiff argues that Dr. Levine's opinion that Plaintiff would be off task for more than twenty percent of the workday should have been afforded controlling weight, due to Dr. Levine's specialty, treating relationship and consistency of opinion with the record. (Dkt. No. 12 at 13.) Next to that marking, however, Dr. Levine wrote, "again, more physical than mental." (T. at 659.) In the Medical Source Statement, Dr. Levine previously noted that Plaintiff's "[d]isabilities are physical based; [Plaintiff] has some decline in functioning but is able to work in a part-time atmosphere." (T. at 658.) Notably, Dr. Levine and NP Tarallo did not treat Plaintiff for physical impairments and saw her only for purposes of mental health. (*See* T. at 484-532, 656.) Accordingly, the ALJ properly afforded less weight to this opinion as it was

speculative.  (T. at 32.)  Plaintiff argues Dr. Levine's opinion is consistent with Dr. Hyla's

opinion that Plaintiff would be off task more than twenty percent of an eight-hour work day.

(Dkt. No. 12 at 14; T. at 635.)  However, as discussed above, the ALJ properly afforded little

weight to the opinion of Dr. Hyla.

### b.      Dr. Noia's Consultative Exam

In determining Plaintiff's mental RFC, the ALJ assigned great weight to consultative

psychological examiner Dr. Noia, as it was not inconsistent with Plaintiff's treatment records and

Plaintiff's statements and testimony.  (T. at 32.)  At the July 12, 2012, psychiatric examination,

Dr. Noia found Plaintiff cooperative and responsive.  (T. at 538.)   She demonstrated an adequate

manner of relating and social skills.  *Id*.  Plaintiff had clear speech, full orientation, and clear

sensorium.  *Id*.  Plaintiff showed coherent and goal directed thought process with no evidence of

delusions, hallucinations, or disordered thinking.  *Id*.  Her mood was calm and she appeared

relaxed and comfortable.  *Id*.  Her attention and concentration were intact.  *Id*.  She had normal

memory, average intellectual functioning, an appropriate general fund of information, and good

insight and judgment.  *Id*.  Based upon his examination, Dr. Noia opined that Plaintiff appeared

capable of understanding and following simple instructions and directions, performing simple

and some complex tasks with supervision and independently, maintaining attention and

concentration for tasks, regularly attending to a routine, maintaining a schedule, learning new

tasks, making appropriate decisions, and relating to and interacting moderately well with others.

(T. at 539.)  Dr. Noia also opined that Plaintiff appeared to have difficulty dealing with stress.

*Id*.

Plaintiff also argues that despite affording Dr. Noia's opinion great weight, the ALJ failed to account for Dr. Noia's opinion that Plaintiff could "relate to and interact moderately well with others." (Dkt. No. 12 at 16; T. at 539.) Plaintiff argues that the failure of the ALJ to reconcile this inconsistency violates SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996) and therefore the RFC was not supported by substantial evidence. (Dkt. No. 12 at 16.) Defendant argues that the ALJ appropriately accommodated Plaintiff by noting that she could respond appropriately to supervisors and coworkers, a finding that corresponds to Dr. Noia's opinion that Plaintiff could interact "moderately" well with others. (Dkt. No. 15 at 14.) Defendant further argues that any ambiguity in the term "moderately" was also resolved by Dr. Noia's examination, which showed that Plaintiff had a cooperative attitude, adequate social skills, a calm mood, and good insight and judgment. (Dkt. No. 15 at 14-15, T. at 538.)

As discussed above, the RFC need not track any one medical opinion and the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta*, 508 F. App'x at 56; *see also Thogode v. Colvin*, No. 3:14-CV-1051, 2015 WL 5158733, at *8 (N.D.N.Y. Sept. 2, 2015).

c.      **Moderate Limitations in Concentration, Persistence or Pace**

Plaintiff claims that the ALJ failed to account for her own finding that Plaintiff suffers from moderate limitations in concentration, persistence, and pace when determining her RFC. (Dkt. No. 12 at 16.) Defendant argues that the ratings found as part of the psychiatric review technique at step three of the sequential evaluation process do not become part of the RFC; rather, they involve two separate analyses. (Dkt. No. 15 at 16.) Defendant is correct.

During step three, the ALJ must consider whether a claimant's mental impairment is sufficiently severe to meet the requirements of the Listings. 20 C.F.R. §§ 404.1520a(b)(1), (d)(1)-(2), 416.920a(b)(1), (d)(1)-(2). The procedure, known as the psychiatric review technique, involves rating the degree of functional limitation in four broad areas, known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(c)(3). In order to meet the severity of a listed impairment under the paragraph B criteria, a plaintiff must have at least two "marked" limitations or have one "marked" limitation in conjunction with "repeated" episodes of decompensation each of extended duration. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(c)(3).

At step three, the ALJ found that Plaintiff had mild limitations in activities of daily living, mild difficulties in social function, moderate limitations in concentration, persistence, or pace, and had experienced no episodes of decompensation. (T. at 28-29.) With regard to concentration, persistence or pace, the ALJ noted that Plaintiff testified that she has trouble focusing due to anxiety. (T. at 29, 66.) However, at the July 12, 2012, psychiatric consultative exam, Plaintiff exhibited intact attention, concentration, and memory skills. (T. at 638.) Plaintiff generally presented to Dr. Levine's office with clear and coherent speech and thought process. (T. at 484-532.) Plaintiff was organized. (T. at 605-10). Plaintiff's hobbies and interests include reading, watching television, playing scrabble and word searches. (T. at 66, 224.) In the June 19, 2012, Function Report, Plaintiff indicated that she had no problems paying attention, can finish what she starts, and can follow spoken and written instructions. (T. at 227.) In light

of the record evidence, the ALJ found that Plaintiff had "moderate, at most, difficulties in the area of concentration, persistence or pace." (T. at 29.)

As the ALJ correctly stated, the limitations identified in the paragraph B criteria are not a residual functional capacity assessment. (T. at 29.) *See* SSR 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairments(s) at steps 2 and 3 of the sequential evaluation process."). The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. *Id.*

Here, there is no error because the ALJ *did* take into account the limitations identified as part of the psychiatric review technique findings. Based upon the objective medical evidence, reported abilities and other opinions of record, the ALJ found that Plaintiff was capable of "understanding, remembering, and carrying out simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine setting." (T. at 30.) Therefore, the same evidence that supports the ALJ's finding of a moderate limitation on concentration, persistence or pace also supports a finding that Plaintiff can perform unskilled work, and Plaintiff's argument is without merit.

Plaintiff's mental RFC is supported by substantial evidence. The ALJ considered Dr. Noia's opinion. (T. at 539-40.) The ALJ also considered Dr. Levine's Medical Source Statement, which indicated that Plaintiff would have a satisfactory performance in all areas of mental functioning, including unlimited or very good performance in the following categories:

carry out very short and simple instructions; sustain an ordinary routine without special supervision; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. (T. at 658-59.) The ALJ also afforded partial weight to NP Tarallo's December 15, 2011, assessment for VESID, where NP Tarallo indicated that Plaintiff's mental health was "good," estimated that Plaintiff had a "good" work ability, and found that she had good work skills and could interact appropriately with others. (T. at 534.) In addition, Plaintiff's June 19, 2012, Function Report indicates that she can follow spoken and written instruction, and has no problems getting along with authority figures. (T. at 659.)

### 4. Credibility Evidence

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the credibility of Plaintiff. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier*, 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374185, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen v. Covlin*, No. 1:11-CV-829, 2014 WL 1289575, at *4, 2014 U.S. Dist. LEXIS 41260, at *10 (Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p. Here, the ALJ determined that Plaintiff's medically determined impairments could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 30.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they

were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p, 1996 WL 374186, at *3. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors

concerning claimant's functional limitations and restrictions due to pain symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

Here, Plaintiff argues that the ALJ's credibility determination of Plaintiff was unsupported by substantial evidence.  (Dkt. No. 12 at 17-19.)  Specifically, Plaintiff argues that the ALJ overstated her activities of daily living, improperly considered her work attempts and participation in VESID, and failed to consider her statements regarding her physical limitations. *Id.*  Defendant argues the ALJ's credibility finding was both proper, and supported by substantial evidence.  (Dkt. No. 15 at 16-19.)  The Court agrees with Defendant.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 2, 1999) (citing *Aponte*, 728 F.2d 599)); *Ferraris*, 728 F.2d  at 587.  "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence."  *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at * 10, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

A review of the decision reveals that the ALJ considered the relevant factors and provided specific reasons for her credibility finding, which is supported by the evidence in the record. *See* T. at 30-33; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. Treatment notes from Plaintiff's dermatologist and rheumatologist indicated Plaintiff's psoriasis had stabilized with Humira and that her joint pain, particularly in her knees also improved with Humira. (T. at 30, 478-79, 482-83.) The ALJ noted that despite reporting residual pain in her neck and back, Plaintiff was able to perform physically demanding tasks since her alleged onset date including driving, dancing, waitressing, and bartending.[11] (T. at 30.) While Plaintiff alleged morning grogginess from her medications, encounter notes from Dr. Levine repeatedly indicated that she experienced no adverse drug reactions during the relevant period. (T. at 523-32.) Moreover,

---

[11] Plaintiff gave inconsistent statements regarding whether she worked during the relevant period, reporting to Dr. Ganesh that she last worked in 2012, while testifying at the hearing that she had stopped working in November 2011. (T. at 50, 541.) The February 1, 2012, progress note from Dr. Levine indicates Plaintiff was "back to dancing at the Alpine." (T. at 527.)

medical records generally noted Plaintiff to be alert, oriented, clear and coherent with good grooming, and intact attention, concentration, and memory skills.  (T. at 523-532, 538-39, 605-10.)

Even in light of Plaintiff's allegations of poor sleep and joint pain, the ALJ noted that Plaintiff attended to her personal care independently, lightly cleaned, drove, traveled by herself, played board games, and shopped.  (T. at 69, 71, 73, 74, 75.)  While Plaintiff gave inconsistent statements, she admitted at times that she was able to cook and do laundry.  (T. at 222-23, 539, 542.)  Plaintiff has been able to maintain good relationships with her family, friends and boyfriend.  (T. at 31, 67, 69, 225.)  Plaintiff stated that she enjoyed going to the gym and working out, including cardio workouts on an elliptical trainer and bike.  (T. at 221, 225, 525-26, 700.)  The ALJ properly discussed Plaintiff's work attempts, including her participation in and subsequent termination from VESID, and testimony that she could work as a receptionist in a calm environment.  (T. at 30-32.)  As a whole, the ALJ properly weighed Plaintiff's improvement with medications and participation in her many and varied activities of daily living, and concluded that Plaintiff's allegations of disabling symptomatology were not credible to the degree alleged.  (T. at 30.)  The ALJ determines issues of credibility, and deference should be given her judgment because she heard Plaintiff's testimony and observed her demeanor.  *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005, 2010 WL 2776978, at *5-7, 2010 U.S. Dist. LEXIS 70411 (N.D.N.Y. July 14, 2010).  Based upon the above, the Court find that the ALJ properly set forth her reasons for finding Plaintiff's claims inconsistent with regard to the intensity, persistence, and limiting effects of her symptoms.  Accordingly, the Court finds that

the ALJ did not err in her assessment of Plaintiff's credibility. The determination of her RFC is based upon proper legal standards and is supported by substantial evidence.

### B. Vocational Expert

Continuing with the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. *See Edwards v. Astrue*, No. 5:07 CV 898, 2010 WL 3701776, at *12, 2010 U.S. Dist. LEXIS 96830, at *38 (N.D.N.Y. Sept. 16, 2010). Plaintiff's argument at step five is two-fold, first asserting that the ALJ's RFC finding was insufficient, and additionally arguing that the nonexertional limitations contained therein rendered the "Grids" inapplicable. (Dkt. No. 12 at 19-21.) Specifically, Plaintiff argues she has significant nonexertional limitations including psychiatric problems, fatigue and pain, which required the testimony of a vocational expert. (Dkt. No. 12 at 20.) Defendant argues that the ALJ's RFC finding is supported by substantial evidence and the ALJ appropriately relied on the Grids to find Plaintiff not disabled. (Dkt. No. 15 at 19-21.) The Commissioner is correct and the Court finds no fault with the ALJ's step five determination.

A hearing officer can determine whether a claimant's nonexertional limitations significantly diminish his or her work capacity by determining whether the claimant can meet the basic mental demands of competitive, remunerative, and unskilled work as provided in Social Security Regulation 85–15. SSR 85–15, 1985 WL 56857, at *3 (S.S.A. Jan. 1, 1985). These demands include the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work

situations; and to deal with changes in a routine work setting." *Id*. at *4. A substantial loss of ability to meet any of these demands would severely limit the potential occupational base. *Sipe v. Astrue*, 873 F. Supp. 2d 471, 480 (N.D.N.Y. 2012).

The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment. *Rosa*, 168 F.3d at 82; 20 C.F.R. § 404.1569a(c)(2). The ALJ cannot rely on the Grids if a nonexertional impairment has any more than a "negligible" impact on the claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). A nonexertional impairment is non-negligible "when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). However, after it has been determined that a plaintiff can perform unskilled work, application of the Grids is appropriate. *Id*. at 410; s*ee also Howe v. Colvin,* No. 12 Civ. 6955, 2013 WL 4534940, at *18, 2013 U.S. Dist. LEXIS 12195 (S.D.N.Y. Aug. 27, 2013) (a claimant's limitation to simple, routine, and repetitive tasks in a low stress environment had little or no effect on the occupational base of unskilled sedentary work). "The mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

For reasons previously discussed, the ALJ properly determined Plaintiff's RFC and concluded that Plaintiff remains able, on a sustained basis, to perform the basic mental demands of competitive, remunerative, unskilled work, including understanding, carrying out and remembering simple instructions, responding appropriately to supervision, and dealing with routine changes in a routine work setting. (T. at 33.) In addition, Plaintiff's need to change

positions can be accommodated by regularly scheduled breaks and a lunch hour. *Id*.; *see* SSR 96-9p. Therefore, since substantial evidence exists in the record for the ALJ to conclude that Plaintiff's nonexertional impairments did not significantly limit the range of work she could perform, the ALJ was under no obligation to identify specific jobs in the national economy that matched Plaintiff's RFC and her reliance on the Grids was appropriate. *Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013). While the Commissioner has the burden to show that a claimant can still perform jobs that exist in the national economy, "[i]n the ordinary case, the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines . . . ." *Bapp*, 802 F.2d at 604. Therefore, the ALJ did not err at step five of the sequential review. The ALJ's decision was based upon correct legal standards and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(g), 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for summary judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: October 15, 2015
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge